Timothy P. Thomas, Esq.
Nevada Bar No. 5148
Law Office of Timothy P. Thomas, LLC
1771 E. Flamingo Rd., Suite B-212
Las Vegas, NV 89119
(702) 227-0011 Fax (702) 227-0334
tthomas@tthomaslaw.com
*Attorney for Debtor.*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEVADA

| | | |
|---|---|---|
| In re: | ) | Case No: 22-10589-ABL |
| | ) | Chapter 11 |
| **ELDAN, LLC,** | ) | |
| | ) | |
| | ) | DATE:          , 2023 |
| Debtor. | ) | TIME:  9:30 a.m. |
| | ) | |

## DEBTOR'S DISCLOSURE STATEMENT

# TABLE OF CONTENTS

| Section | Page |
|---|---|
| **I.**   INTRODUCTION | 4 |
| **II.**  INFORMATION REGARDING THE PLAN AND DISCLOSURE STATEMENT | 5 |
| A. Overview | 5 |
| B.  Admonitions | 6 |
| C.  Ballots and Voting | 9 |
| D.  Confirmation and Objections | 10 |
| 1.  Adequacy of the Plan | 10 |
| 2.  Objections and Voting Requirement | 10 |
| 3.  Cramdown of Non-Accepting Class | 11 |
| **III.**  REPRESENTATIONS | 12 |
| **IV.**  BACKGROUND AND EVENTS LEADING TO CHAPTER 11 FILING | 12 |
| A.  The Debtor and Its Business | 12 |
| B.  Events Leading to the Chapter 11 Filing | 12 |
| C.  Debtor Strategy for Reorganization | 13 |
| **V.**  DESCRIPTION OF THE DEBTOR ASSETS AND LIABILITIES | 14 |
| A.  Debtor's Assets | 14 |
| B.  Debtors' Principal Liabilities | 14 |
| **VI.**  SIGNFICANT EVENTS DURING THE BANKRUPTCY CASE | 14 |
| A.  Filing Bankruptcy and Retaining Counsel | 14 |
| **VII.**  OVERVIEW OF PLAN | 16 |
| A.  General Summary | 16 |
| B.  Classes of Claims | 17 |
| 1.  Class 1 Allowed Secured Property Claims | 17 |
| 2.  Class 2 Priority Unsecured Claims | 18 |
| 3.  Class 3 General Unsecured Claims | 18 |
| 4.  Class 4 Equity Holders | 19 |
| C.  Unclassified Claims | 20 |
| 1.  Administrative Claims | 20 |
| 2.  Trustee's Fees | 21 |
| **VIII.**  MODIFICATION, ALTERATION AND REVOCATION OF THE PLAN | 21 |
| A.  Modification of the Plan | 21 |

|   |   | B. Revocation of the Plan | 21 |
|   |   | C. Severability | 22 |
| IX. | | EFFECTS OF CONFIRMATION AND IMPLEMENTATION OF THE PLAN | 22 |
|   |   | A. Reservation of Rights | 22 |
|   |   | B. Vesting of the Assets in the Reorganized Debtor | 22 |
|   |   | C. Discharge of Debtor | 23 |
|   |   | D. Plan Payments | 23 |
|   |   | E. Objecting to Claims | 26 |
|   |   | F. Holding of Undeliverable Distributions and Failure to Claim | 26 |
|   |   | G. Fractional Amounts | 27 |
|   |   | H. Binding Effect | 27 |
|   |   | I. Exculpation | 27 |
|   |   | J. Governing Law | 27 |
|   |   | K. Computation of Time | 28 |
|   |   | L. Final Decree | 28 |
| X. | | TAX CONSEQUENCES OF THE PLAN | 28 |
| XI. | | LIQUIDATION ANALYSIS AND ALTERNATIVES TO PLAN | 30 |
|   |   | A. Alternatives to Plan | 30 |
|   |   | B. Liquidation | 31 |
|   |   | C. Assumptions of Liquidation Analysis | 32 |
| XII. | | CONCLUSION AND RECOMMENDATION | 32 |

ELDAN, LLC, Debtor and Debtor-in-Possession ("Eldan" or "Debtor") in the above case, provides this Disclosure Statement to its known creditors for the purpose of voting on the Plan of Reorganization filed on May 15, 2023. A copy of the Proposed Plan is attached hereto as "Exhibit 1".

I.    **INTRODUCTION**

The Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code on February 21, 2022. ("Petition Date"). Pursuant to Sections 1107 and 1108, the Debtor is the Debtor-in-possession representative of their bankruptcy estate.

The Debtor has prepared this Disclosure Statement in connection with the solicitation of acceptance of its Plan filed on May 15, 2023. The purpose of this Disclosure Statement is to provide adequate information of a kind, and in sufficient detail, that would enable a hypothetical reasonable investor, typical of the holders of claims and equity interests, to make an informed judgment about the Plan. An acceptance or rejection of the Plan must be in writing and may only be made by completing the ballot that accompanies the Plan. In order for your vote to be counted, it must be received no later than 5:00 p.m. (Pacific Daylight Time) on _____, 2023, at the following address:

Law Office of Timothy P. Thomas, LLC
1771 E. Flamingo Rd. Suite B-212
Las Vegas, Nevada 89119

Unless otherwise defined herein, the terms defined in the Plan shall have the same meanings when used in the Disclosure Statement. In addition, unless otherwise defined, terms used in the Disclosure Statement and Plan shall have the same meaning as in the U.S. Bankruptcy Code or the Bankruptcy Rules.

II.    **INFORMATION REGARDING THE PLAN AND DISCLOSURE STATEMENT**

A.  **Overview**

The objective of a chapter 11 case is the confirmation of a plan of reorganization by the Bankruptcy Court.  The formulation of a Plan of Reorganization ("Plan") sets for the means of satisfying claims against the interests of the debtor.  The Plan describes in detail, and in language appropriate for a legal contract the means for satisfying claims.  The Plan places claims in separate classes and describes the treatment of each class, including whether the claims are impaired or unimpaired.  After a Plan has been filed, the holders of such claims that are impaired, as defined in Section 1124, are permitted to submit a vote to accept or reject the Plan.  If confirmed, your recovery will be limited to the treatment set forth in the terms of the Plan.

The Court will consider whether the Plan has satisfied the various requirements of the Bankruptcy Code, including, but not limited to, whether it is feasible and whether it is in the best interests of holders of claims and interests.  The Bankruptcy Court will also receive a ballot summary prepared by the Plan proponent concerning the votes for acceptance or rejection of the Plan by holders of claims and interests entitled to vote.

The Court has reserved _____, 2023 at 1:30 p.m., Pacific Daylight Time, for the hearing on the adequacy of the Disclosure Statement.  The hearings may be continued from time to time without further written notice.  Section 1125 sets forth the requirements for a Disclosure Statement.

The Disclosure Statement is submitted in accordance with Section 1125 for the purpose of soliciting acceptance of the Plan from holders of claims and interests.  The purpose of the Disclosure Statement is to,

(a) Provide adequate information to enable a hypothetical reasonable investor typical of

the holders of claims in the case to make an informed judgment about the Plan;

(b) Set forth information regarding the history of the Debtor, the filing of the Chapter 11 Petition and the Plan;

(c) Advise Creditors of the proposed resolution of their Claims; and

(d) Assist the Bankruptcy court in making an informed decision regarding whether the Plan complies with the requirements of the Bankruptcy Code.

No post-petition solicitation of votes on the Plan may be made except pursuant to this Disclosure Statement and no person has been authorized to utilize any information concerning the Debtor other than the information contained in this Disclosure Statement for purposes of solicitation.

**B. ADMONITIONS**

THIS DISCLOSURE STATEMENT IS NOT THE PLAN. THIS DISCLOSURE STATEMENT AND THE EXHIBITS TO THIS DISCLOSURE STATEMENT, TOGETHER WITH THE PLAN WHICH IS ATTACHED HERETO AS **EXHIBIT 1,** SHOULD BE READ IN THEIR ENTIRETY. FOR THE CONVENIENCE OF CREDITORS, THE PLAN IS SUMMARIZED IN THIS DISCLOSURE STATEMENT, BUT ALL SUMMARIES ARE QUALIFIED IN THEIR ENTIRETY BY THE PLAN ITSELF, WHICH IS CONTROLLING IN THE EVENT OF ANY INCONSISTENCY.

INTERESTED PARTIES MAY ALSO OBTAIN FURTHER INFORMATION FROM THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA, INCLUDING ACCESS TO THE DOCKET FOR THIS CASE, AT THE COURT'S WEBSITE: **WWW.NVB.USCOURTS.GOV.**

APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY

COURT DOES NOT MEAN THAT THE BANKRUPTCY COURT RECOMMENDS ACCEPTANCE OR REJECTION OF THE PLAN.

THE STATEMENTS AND INFORMATION CONCERNING THE DEBTOR SET FORTH IN THIS DISCLOSURE STATEMENT CONSTITUTE THE ONLY STATEMENTS OR INFORMATION CONCERNING SUCH MATTERS THAT HAVE BEEN APPROVED BY THE BANKRUPTCY COURT FOR THE PURPOSE OF SOLICITING ACCEPTANCES OR REJECTIONS OF THE PLAN. THE STATEMENTS AND INFORMATION ABOUT THE DEBTOR AND THE FINANCIAL INFORMATION OF DEBTOR INCLUDING ALL FINANCIAL PROJECTIONS AND INFORMATION REGARDING CLAIMS CONTAINED IN THE DISCLOSURES STATEMENT HAVE BEEN PREPARED FROM DOCUMENTS AND INFORMATION OBTAINED FROM THE DEBTOR.  CERTAIN ESTIMATES, ASUMPTIONS AND PROJECTIONS MAY BE MATERIALLY DIFFERENT FROM ACTUAL FUTURE RESULTS.  THERE CAN BE NO ASSURANCE THAT ANY FORECASTED OR PROJECTED RESULTS CONTAINED IN THIS DISCLOSURE STATEMENT WILL BE REALIZED AND ACTUAL RESULTS MAY BE MATERIALLY DIFFERENT FROM THOSE SHOWN. DEBTOR IS UNABLE TO AND DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED IN THIS DISCLOSURES STATEMENT IS WITHOUT ERROR.

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE OF THIS DISCLOSURE STATEMENT UNLESS ANOTHER TIME IS SPECIFIED.  NEITHER THE DELIVERY OF THIS DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN CONNNECTION WITH

THE PLAN SHALL UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION SET FORTH IN THE DISCLOSURE STATEMENT SINCE THE DATE OF THIS DISCLOSURE STATEMENT AND THE MATERIALS RELIED UPON IN PREPARATION OF THIS DISCLOSURE STATEMENT WERE COMPILED.

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO ASSIST THE COURT IN DETERMINING WHETHER THE PLAN COMPLIES WITH THE REQUIREMENTS OF THE BANKRUPTCY CODE, AND THE DISCLOSURE STATEMENT MAY ALSO BE RELIED UPON FOR THE PURPOSE OF DETERMINING WHETHER TO VOTE IN FAVOR OF OR AGAINST THE PLAN. NOTHING CONTAINED IN THIS DISCLOSURE STATEMENT CONSTITUTES AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY NOR IS IT CONCLUSIVE EVIDENCE OF TAX OR OTHER LEGAL EFFECTS OF THE REORGANIZATION OF THE DEBTOR ON HOLDERS OF CLAIMS OR HOLDERS OF INTERESTS.

AT THE CONFIRMATION HEARING, THE BANKRUPTCY COURT WILL CONSIDER WHETHER THE PLAN SATISFIES THE VARIOUS REQUIREMENTS OF THE BANKRUPTCY CODE.  THE BANKRUPTCY COURT WILL ALSO RECEIVE BALLOT SUMMARIES WHICH WILL PRESENT A TALLY OF THE VOTES OF CLASSES ACCEPTING OR REJECTING THE PLANS AS CAST BY THOSE ENTITLED TO VOTE.  ONCE CONFIRMED, THE PLANS WILL BE TREATED ESSENTIALLY AS CONTRACTS BINDING ALL CREDITORS AND OTHER PARTIES-IN-INTEREST IN THE CHAPTER 11 CASES.

## C. Ballots and Voting

Only creditors whose claims have been allowed for the purposes of voting and are "impaired" by the plan are entitled to vote on the Plan.  According to the designation of Classes of claims set forth under the Plan, holders of claims in all Classes are "impaired" by the Plan and are entitled to vote on the plan, and the holders of those claims shall receive a ballot and be permitted to vote to accept or reject the Plan.

Creditors are entitled to vote on confirmation on the Plan unless, (i) their class is unimpaired or is to receive no distribution; (ii) an objection has been filed to the creditor's claim; (iii) the creditor's claim is scheduled by Debtor as contingent, disputed, unliquidated or unknown and the creditor has not filed a proof of claim; or (iv) the claim is unclassified.  A creditor whose claim has been either objected to or has been scheduled by Debtor as contingent, disputed, unliquidated or unknown or the creditor has not filed a proof of claim and who wishes to vote, must move to have its claim allowed for voting purposes by filing a motion for such relief in time for that motion to be heard before the hearing on confirmation of the Plan.  A creditor whose claim has been allowed in part as secured and in part as an unsecured claim is entitled to accept or reject a Plan in each capacity by casting one ballot for the secured portion of the claim and another ballot for the unsecured portion of its claim.

A creditor is entitled to vote on the Debtor's plan of reorganization only if the creditor holds a valid claim with regard to the Debtor.  Creditors will be issued separate ballots for each class and for each specific claim which they hold that is entitled to a vote.  Ballots returned for invalid claims will be disregarded.

///

**D. Confirmation and Objections**

    1.  <u>Adequacy of the Plan</u>

In order to be confirmed, the Plan must meet the requirements listed in Section 1129(a) or (b) of the Bankruptcy Code.  Those requirements include (1) the Plan must be proposed in good faith; (ii) at least one impaired class of claims must accept the Plan, without counting votes of insiders; (iii) the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a Chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and (iv) the Plan must be feasible, meaning that there is a reasonable probability that under the terms of the Plan, the debtor will be able to meet its obligations without need for further financial reorganization or protection from the Bankruptcy Court.  These requirements are not the only requirements listed in Section 1129, and they are not the only requirements for confirmation.

    2.  <u>Objections and Voting Requirements</u>.

Section 1128(b) provides that a party in interest may object to confirmation of a plan.  Any objections to the adequacy of the Disclosure Statement or to confirmation of the Plan must be in writing and specify in detail the name and address of the objector.  Any Plan confirmation objection must be filed with the Bankruptcy court and served on counsel for the Debtor, Timothy P. Thomas, Esq. at the address indicated on the front page of this Disclosure Statement.

At least one allowed and impaired class of claims must vote to accept the Plan without counting votes of insiders or all impaired classes must vote to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed below.

A class accepts the Plan if both of the following occur: (A) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan; and (B)

the holders of at least two-thirds (2/3) of the dollar amount of the allowed claims in the class, who vote, casts their votes to accept the Plan.

      3.   <u>Cramdown of Non-Accepting Classes</u>.

      Even in the event that one or more impaired classes rejects the Plan, the Court may nonetheless confirm the Plan if the non-accepting classes are treated in the manner prescribed by §1129(b) of the Code. A plan that binds non-accepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind non-accepting classes of claims if it meets all requirements for consensual confirmation except the voting requirements of §1129(a)(8) of the Code, and it does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

      Confirmation of a reorganization plan without full acceptance of all impaired classes is referred to as a "cramdown." If a "cramdown" is granted, the claimholder can elect under 1111(b) of the Code to either be deemed secured in the entire amount of their claim or to accept the cramdown and receive distributions for the unsecured portion of their claim to be shared pro-rata with other creditors.

      With regard to the Plan, the Bankruptcy Court will (a) determine whether the Plan has been accepted by the requisite majorities of each Voting Class; (b) determine all objections to the Plan and to Confirmation of the Plan; (c) determine whether the Plan meets the requirements for Confirmation of the Plan; (d) determine whether the Plan meets the requirements of the Bankruptcy Code and has been proposed in good faith; and (e) confirm or refuse to confirm the Plan.

      A separate notice will be served with this Disclosure Statement and the Plan which reflects the dates and deadlines set forth above.

III.    REPRESENTATIONS

Unless otherwise specifically noted, the financial information in this Disclosure Statement has not been subject to audit.  Instead, this Disclosure Statement was prepared from information compiled from records maintained in the ordinary course of the Debtor business.  Debtor has attempted to be accurate in the preparation of this Disclosure Statement.

Other than stated herein, the Debtor has not authorized any representations or assurances concerning Debtor or its business operations or the value of their assets.  Therefore, in deciding to accept or reject the Plan, you should not rely on any information relating to the Debtor or the Plan other than that contained in the Disclosure Statement or in the Plan itself.

IV.    BACKGROUND AND EVENTS LEADING TO THE CHAPTER 11 FILING

A.  The Debtor and Its Business

The Debtor is a Nevada limited liability company that owns an improved piece of real estate, located at 5875 South Rainbow Blvd., in Las Vegas, Nevada (the "Property") and is operated as an office building where separate suites are leased to third party tenants to provide income to meet the debts of the estate.  The real estate parcel served as collateral to secure multiple loans.  Debtor is in the business of managing and marketing the real property for lease.

B.  Events Leading to the Chapter 11 Filing.

In 2007, Eldan, LLC constructed an office building.  Eldan entered into a first mortgage with the Town & Country Bank Loan, ("T&C Loan") in the amount of $4,230,000 to provide operating income. The loan was secured by a Note and a Deed of Trust on the Property.   At the time of the T&C Loan, the ownership equity interests in the Debtor were held by Daniel Itzhaki, Natalie Hetly and Eli Elezra.

The secured Property consists of one (1) parcel of improved real property that is operated as

leased office space. (APN 163-13-211-009) (the "Eldan Property"). Debtor holds the Property in fee simple with 100% interest in the Eldan Property..The Eldan Property has been appraised at $7,000,000. [Dkt 1, p12] Debtor has no business operations beyond the holding and management of the Eldan Property. The Debtor has no current employees.

A second secured loan was issued to the Debtor by LOA Investments, LLC ("LOA"). The LOA Loan is listed in the bankruptcy petition and schedules as disputed. LOA filed a secured proof of claim ("Proof of Claim #2") in the amount of $3,040,566.89. This position was purchased by insiders and has a balance of $1,125,000.

A third secured claim is held by the Small Business Administration in the amount of $158,423 ("Proof of Claim #3").

The Debtor is current on its loan obligations and its tax obligations.

At the time of the filing of the bankruptcy petition, Debtor was involved in litigation with LOA in the Clark County District Court, Eighth Circuit, Case No. A-19-798172-C. The Debtor was involve in separate litigation with Eli Elezra, Clark County District Court, Eighth Judicial District Court. The bankruptcy was filed to avoid a potential foreclosure by the second mortgage company LOA.

**C**. **Debtor's Strategy for Reorganization**

The Debtor plans to reorganize its business affairs by an infusion of new money from an insider, Daniel Itzahki.

Debtor estimates that the infusion of new money from Daniel Itzahki and the ongoing operations income from the leases will provide sufficient income to satisfy the outstanding creditor's claims entirely. All proceeds will be allocated to pay priority and secured tax debts upon the approval of the Plan of Reorganization. Subsequent to payment in full of all

administrative and secured creditor claims, remaining new money proceeds will be distributed to satisfy any unsecured claims prior to any distribution to the equity holders.

## V.    DESCRIPTION OF THE DEBTOR'S ASSETS AND LIABILITIES

### A.  **Debtor's Assets**

#### Real Property

Debtor holds the real property, consisting of one (1) parcels of adjacent real property that operated as an office building with leases to tenants, in Las Vegas, Nevada.  The parcel (APN 163-13-211-009) includes the Eldan Property.

Debtor has no outstanding account receivables, equipment or tangible assets.

### B.    **Principal Liabilities of the Debtors**

The primary creditor of the Debtor is the Town & Country Bank, which holds a secured claim in the amount of $2,373,919.72.  A second position lien is held by Daniel Itzahki and Natalie Hetly, in the amount of $1,125,00, as part of a Settlement Compromise Agreement with LOA. The SBA has a secured loan in the amount of $158,423.11 obtained under the COVID-19 Emergency. A disputed proof of claim was also filed by Eliahu Elezra ("Elezra") as an unsecured claim, in the amount of $5,961,687.68.  Elezra is a former insider equity holder of the Debtor. There is an ongoing adversary proceeding, Case No 22-01148, in the Bankruptcy Court for the District of Nevada.

## VI.    SIGNIFICANT EVENTS DURING THE BANKRUPTCY CASE

As of May 1, 2023, the Bankruptcy Court's docket contained 116 entries on the case. Below is a summary of material applications, motions and all adversary proceedings filed to date.

### A.  **Filing of Bankruptcy and Retention of Counsel**

On February 21, 2023, Debtor filed its Chapter 11 Bankruptcy Petition through the Law

-14-

Office of Christopher Patrick Burke, Esq. as Debtor's counsel.

On March 30, 2022, the Debtor completed the Section 341 Meeting of Creditors.[Dkt. 20]

On April 22, 2022, the Motion to Employ Christopher Patrick Burke, Esq was approved. [Dtk 27]

On June 22, 2022, the Debtor filed its Motion to Allow Debtor in Possession to Compromise the Claim of LOA, to Incur Debt and to Retroactively Lift the Stay. [Dkt. 33]

On August 16, 2022, the Court entered an Order Granting in Part, Denying in Part Debtor's Motion to Allow Debtor in Possession to Compromise the Claim of LOA, to Incur Debt and to Retroactively Lift the Stay. [Dkt. 50]

On November 2, 2022, an Adversary Proceeding Complaint was filed by Eliahu Elezra against Eldan, LLC, Daniel Itzhaki and Natalie Hetly, Case No. 22-01148-abl.

On December 16, 2022, the Debtor filed a Motion to Terminate the Stay to remove the adversary to state court. [Dkt. 62]

On January 10, 2023, T & C Bank filed a Motion to Terminate the Stay to pursue foreclosure remedies. [Dkt. 66]

On February 3, 2023, a Substitution of Attorney was filed by the Law Office of Timothy P. Thomas, LLC to take the position of lead counsel for the Debtor. [Dkt. 76]

On March 6, 2023, the Court entered an Order Granting the Motion to Terminate Stay of T&C Bank. [Dkt. 85]

On April 7, 2023, the Court entered the Order Denying Debtors Motion to Terminate Stay. [Dkt. 100]

On April 20, 2023, the Court approved the Application to Employ the Law Office of Timothy P. Thomas, LLC [Dkt. 111]

On April 19, 2023, Debtor sought Court approval under 11 U.S.C. 363 to approve the infusion of new money from insider Daniel Itzhaki to satisfy the T&C Loan on shortened time. [Dkt. 104] The Court denied the motion without prejudice, at the hearing on April 28, 2023.

## VII.    OVERVIEW OF PLAN

### A.    General Summary

The following is a general summary of the Plan for the Debtor, which is qualified in its entirety by reference to the provisions of the related specific Plan of Reorganization.  Pursuant to Section 1123(a)(1), Administrative Claims and U.S. Trustee Claims are not impaired and therefore not designated as Classes.  The summary of Classes, whether or not they are impaired and entitled to vote is set forth below:

| 07-005 Artois Business Trust Class | Creditor | Property | Claims | Payment |
|---|---|---|---|---|
| Class 1 | Town & Country Bank | $7,000,000 | $2,373,919.72 | 100% from New money |
| Class 2 | Itzhaki/Hetly Loan | $7,000,000 | $1,050,000 | 100% from operations |
| Class 3 | SBA Loan | N/A | $158,423.11 | 100% from operations |
| Class 4 | General Unsecured | N/A | $5,961,687.68 | Disputed |
| Class 4 | Equity Holders | | | Pro rata subordinated |
| Admin. | Professionals | N/A | $20,000 | Pay in full |
| US Trustee | Us Trustee fees | N/A | N/A | Pay in full |
| | | | | |

The Debtor intends to continue to retain Omniterra, to manage the marketing and leasing of the real property.  Omniterra will be paid a management fee of $2,500 per month plus commissions on new leases.  All new money will be designated to pay all creditors at the close of escrow, and operating income will be used to satisfy all remaining approved debt in its entirety.

Per the Operating Agreement.  After the payment of all Class 1-4 claims, the remaining proceeds of operations will be distributed under the Operating Agreement of Eldan, LLC  to the equity holders of the Debtor pursuant to their interests.  The Debtor does not intend to liquidate the assets of the estate.

**Classes of Claims**

The following classes are set forth in the Plan, with the proposed treatment under the Plan provisions.  Specific provisions for treatment are set forth in Articles I and II of the Debtor's Plan of Reorganization.

1.    **Class 1 Allowed Secured Property Claims secured by Debtor's Real Property held by Town & Country Bank.**

Class 1 claims consist of claims secured by the Debtor's Property.  The first position mortgage secured claims is held by Town & Country Bank.  The Debtor took this loan as a prior refinance of prior secured loans taken by Eli Elezra. The loan has been kept current on payments but the lender declared a default based upon the filing of the bankruptcy.

The Debtor intends to have an infusion of new money for insider Daniel Itzhaki to be used for the purpose of satisfying this claim in full.

The prepetition secured claim of Town & Country Bank of approximately $2,373,743.99 will be paid in full with all applicable costs, fees, charges and interest pursuant to 11 USC Sections 506(b) and 511 upon the Effective Date of the confirmed Plan of Reorganization. Town & Country has  recently increased the interest rate on the loan, under the loan agreement, which will greatly increase the cost to the Debtor to maintain the loan payments in excess of $17,000 per month.

Debtor will satisfy the Town & Country Bank claim from $2,373,743.99 advanced from

an insider, Daniel Itzakhi pursuant to the confirmed plan. The Eldan Property will be operated and the lease income will fund the balance of the confirmed plan..

A failure by the Debtor to make a payment to T & C Bank pursuant to the terms of the Plan shall be an event of default.  If the Debtor fails to cure an event of default as to tax payments within ten (10) days after Effective Date of the Plan, T & C Bank may enforce the entire amount of its claim, plus all penalties and interest accrued under state law, against Debtor in accordance with applicable state laws, including the completion of a foreclosure sale.  This class is impaired by the delay in payment.

Each Class 1 Claimant receives a vote to either accept or reject the plan. This class is impaired by the delay in payment.

**Class 2:  Second secured Claims**

Class 2 Second secured Claims are claims that are held by Daniel Itzahki and Natalie Hetly under the compromise of the LOA claim. The compromise reduced the second deed of trust to the amount of $1,125,000.   The holders of this class are insiders and may be subject to subrogation of their claims until any unsecured claims are satisfied.   A class of holders of such claims, however, may vote to accept different treatment.

Class 2 claims do not have a vote in this case.

**Class 3: Small Business Administration Loan**

The Debtor took an EIDL loan with the Small Business Administration during the COVID-19 pandemic.  The loan is in repayment and currently has a balance of $156,000.  This claim is secured by the assets of the Debtor until paid in full. The payments on this loan began in January 2023 but were suspended due to the bankruptcy.  The loan will be returned to good standing and payments will be made under the original terms of the loan. This claim will be paid

with operating income from leasing the estate property. Any impairment will be a result of delay in payment.

Class 3 has a vote in this case.

**Class 4: General Unsecured Claims.**

General unsecured claims are not secured by property of the estate and are not entitled to priority under Section 507(a) of the Bankruptcy Code. Class 3 claims consist of capital investments made by the investing beneficiaries of the Debtor, including the disputed claim of Eliahu Elezra, who asserts a claim of $5,961,687.68 based upon his initial investment into the Debtor. However, Elezra also received the majority of the loan proceeds through direct payment of gambling debts. The payment of the loans by the Debtor resulted in forfeiture of Elezra's equity holding in 2013. Elezra asserts a claim in the adversary that he was improperly removed as an equity holder of 50%. To the extent that Elezra's claim is valid, he would be classified as an insider and would be subject to subrogation until all other unsecured creditors have been paid in full. Elezra's equity interest was forfeited and removed in 2018 under the Amended Operating Agreement based upon a stated deadline for payment of the loans by Elezra. To the extent that the Debtor's position is valid, Elezra will not have a valid claim. There are no other know claim holders that do not have insider affiliated status. General unsecured claims amount to approximately $0 in undisputed claims.

After payment of the Class 1 claims, the general unsecured creditors will be paid 100% of their allowed claim. Each Class 4 claimants receive a vote to either accept or reject the Plan, unless there is an objection to their claim.

**Class 5: Equity Holders.**

Class 5 consists of equity holding members of the Debtor limited liability company. The

members initially invested into the purchase and improvement of the real property in the estate. Equity Holders are members of the Debtor and will be subordinated as insiders to the other creditor Classes 1-3.  Class 5 will receive a pro rata distribution of operating proceeds after Classes 1-4 have been paid in the ordinary course of business or paid in full and all administrative allowed claims have been paid in full.

Class 5 claims are insider claims and are not valid for confirmation of the plan.

**C.    <u>Unclassified Claims against Debtor</u>**

Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered to be impaired and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with the requirements of the Code.  For a detailed analysis and description of the individual unclassified claims, see Articles I and II of the Debtor's Plan of Reorganization.

1.   <u>Administrative Expenses.</u>

Administrative expenses are costs and expenses of administering the Debtor's Chapter 11 case which are allowed under section 507(a)(2) of the Bankruptcy Code.  Administrative expenses include attorney's fees incurred by the Debtor for representation in the Bankruptcy Case, as well as the claims of creditors that have provided services to the Debtor post-petition. These claims include the payment of any management fees for services provided and property taxes incurred post-petition.  A list of the administrative claims is included in the Plan.  Additional U.S. Trustee fees may be approved by the court and paid through the estate prior to confirmation and through administration of the Plan. Administrative claims will be paid within 10 days after the Plan Effective Date as they come due for payment or as agreed upon with the Debtor from the revenue of the Debtors.

### 2. Trustee's Fees

The U.S. Trustee's office accrues fees for the administration of the Bankruptcy Case and Chapter 11 Plan. 28 U.S.C. §1930(a)(6) requires that the Debtor make payment of the U.S. Trustee's fees as they accrue. These fees will be paid current on the Effective Date of the Plan and paid as they become due and owing.

## VIII.    MODIFICATION, ALTERATION AND REVOCATION OF THE PLAN

### A.    Modification of the Plan.

The Debtor may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or re-voting on the Plan.

Upon request of the Debtor, the U.S. Trustee, or the holder of an allowed unsecured claim, the Plan may be modified at any time after confirmation of the Plan but before completion of payments under the Plan, to (1) increase or reduce the amount of payments under the Plan on claims of a particular class, (2) extend or reduce the time period for such payments, or (3) alter the amount of distribution to a creditor whose claim is provided for by the Plan as is necessary to account for any payment of the claim made other than under the Plan. Such modification is subject to Court and U.S. Trustee approval.

### B.    Revocation of the Plan

The Debtor reserves the right to revoke or withdraw the Plan prior to the confirmation hearing and to file subsequent Chapter 11 plans. If the Debtor revoke or withdraw the Plan, or if confirmation does not occur, then (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan shall: (a) constitute a waiver or release of any Court: and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims by or against, the Debtor or any other entity; (b) prejudice in any manner the rights of the Debtor

or any other entity; or (c) constitute an admission, acknowledgement offer or undertaking of any sort by the Debtor or any other entity.

### C.  Severability

If, prior to confirmation of the Plan, any term or provision of the Plan is held by the Court to be invalid, void or unenforceable, the Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted, provided that any such alteration or interpretation must be in form and substance reasonably acceptable to the Debtor, and, to the extent such alteration or interpretation affects the rights or treatment of holders of general unsecured claims, such claim holder.

### IX.    EFFECTS OF COMFIRMATION AND IMPLEMENTATION OF THE PLAN

### A.  Reservation of Rights

The Plan shall have no force or effect until the Court enters the Confirmation Order. Neither the filing of the Plan, any statement or provision contained in the Disclosure Statement, nor the taking of any action by the Debtor or any other entity with respect to the Plan shall be an admission or waiver of any rights of (1) the Debtor with respect to the holders of claims or other entities; or (2) any holder of Claims or other entity prior to the Effective Date of the Plan.

### B.  Vesting of Assets in the Reorganized Debtor.

After confirmation of the Plan, all property of the Debtor shall vest in the relevant reorganized Debtor, free and clear of all liens, claims, charges, or other encumbrances, except those enumerated in the order approving the Motion to Value and the confirmation order.  The reorganized Debtor may operate its business and may use, acquire, dispose of property and

compromise or settle any claims without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Rules, other than those restrictions expressly imposed by the Plan and the confirmation order. Without limiting the foregoing, the Debtor may pay the liabilities that are incurred after confirmation for professional fees, disbursement, expenses or related support services without application to the Bankruptcy Court.

**C.  Discharge of the Debtor**.

The Debtor is a corporate entity and as such does not receive a discharge from all debts that arose prior to confirmation of the plan pursuant to §1141(d)(3)(C). However, the confirmed plan of reorganization is binding upon any creditor, whether or not such creditor has accepted the plan, pursuant to §1141(a).

**D.    Plan Payments**

The Debtor will implement its Plan by having Omniterra serve as the Plan Agent for payment of Claims pursuant to the Plan. A management fee of $2,500 per month and commissions will be paid to Omniterra for serving as Plan Agent beyond the management fee; however, it will be entitled to reimbursement of expenses and compensation for any professionals who assist in the performance of the duties of the Plan Agent.

The Plan Agent is authorized, without limitation, to:

(a)  Manage, protect and preserve the Assets, subject to the terms and limitations set forth in the Plan.

(b) Release, sell, transfer, convey or assign any right, title, interest in or about the Assets or any portion thereof with the approval of the Bankruptcy Court after hearing and notice, unless the value of the Asset is less than $25,000, in which case Bankruptcy Court approval is not required.

(c) Pay and discharge any costs, expenses, professional fees or obligations deemed necessary to preserve or enhance the value of the Assets.

(d) Open and maintain bank accounts and deposit funds or draw checks and make distributions in accordance with the Plan.

(e) Engage and retain attorneys, accountants, engineers, agents, tax specialists, financial advisers, appraisers, investment bankers, or other professionals and clerical assistance as may, in the discretion of the Plan Agent, be deemed necessary.

(f) Execute any documents on behalf of the Estate necessary to further the goals and objectives and accomplish the purposes of the Plan.

(g) Pay obligations or expenses of or relating to the Assets and that the Plan Agent reasonably deems to be in the best interest of Creditors or necessary to effectuate the Plan.

(h) Analyze, evaluate, pursue and settle and compromise any and all Litigation Claims and other causes of action on behalf of the Estate, objections to Claims, and any appeals thereof, and otherwise sue and be sued as is necessary to fulfill the obligations and duties under the Plan.

(i) Enforce, waive, or release rights, privileges or immunities relating to the Assets.

(j) Initiate, prosecute, settle and resolve any and all litigation claims and other causes of action on behalf of the Estate, objections to Claims, and any appeals thereof with the approval of the Bankruptcy Court after hearing on notice, unless the amount in controversy is less than $25,000, in which case approval of the Bankruptcy Court is not required.

(k) Liquidate and convert all or any portion of the Assets to Cash.

(l)  Establish and maintain reserves required by the Plan.

(m) Make Distribution in accordance with the terms of the Plan

(n)  Act as is necessary with regard to all matters which the jurisdiction of the Bankruptcy Court is reserved under the Plan.

(o)  As soon as is practicable after the Final Distribution, oversee the dissolution and winding up of the Estate in accordance with applicable law and seek a Final Order from the Bankruptcy Court closing the Case and entry of a Final Decree.

(p)  Without limiting any of the foregoing, deal with the Assets or any part or parts thereof in all other ways as would be lawful and do any and all things necessary to further the goals and objectives and accomplish the purposes of the Plan.

The Plan Agent will make the plan payments from the revenue that is generated from the operation of Debtor assets in whole or in part.  The real property value held by the estate is estimated at $7,000,000 pursuant to a recent appraisal.  The leasing costs and other expenses of operating and leasing the Property will be paid from the leasing proceeds through the confirmed plan period.  The expected net revenue from the leasing of the Property is anticipated to be sufficient to pay all allowed claims 100%.

Debtor has approximately $10,000 in cash reserves.  This reserve is accumulated from the ongoing business revenue and will be used to pay for administrative expenses upon confirmation.  The plan contemplates to use of the reserve funds to satisfy the initial costs of the Plan at the Effective Date and to replenish this reserve from the monthly income.

Plan payments will be made on all allowed claims under the Plan through the Debtor-in-Possession account.  Under supervision of the U.S. Trustee, the Debtor will deposit all surplus income into this account after payment of all operational expenses and allowed claims.  Payments

pursuant to the Plan will be made pursuant to the terms of the Plan until such claims are paid.

Except as otherwise agreed or set forth in the Plan, payments upon disputed claims will be made after the claim has become an Allowed Claim and a final non-appealable order of the Bankruptcy Court has been entered. Notwithstanding anything in the Plan to the contrary, no partial payments and no partial distributions shall be made with respect to a disputed claim until all such disputes in connection with such disputed claim have been resolved by settlement among the parties or by entry of a final order of the Court. Any post-petitions payments made pursuant to an order of the Court will be credited to the satisfaction of the Allowed Claim under the terms of the Plan.

### D.  Objections to Claims

After the Effective Date, objections to Claims shall be made and objections to Claims made previous thereto shall be pursued by the Plan Agent or any other party properly entitled to do so after notice to the Plan Agent and the Reorganized Debtor, with approval by the Bankruptcy Court. Any objections to the Claims made after the Effective Date shall be filed and served not later than 180 days after the Effective Date; provided, however, that such period may be extended by order of the Bankruptcy court for good cause shown. In order to facilitate the Payment to holders of Allowed Claims and if and to the extent there are Disputed Claims in any Class, the Plan Agent shall set aside in a separate designated reserve account the payments applicable to such Disputed claims as if such Disputed Claims were Allowed Claims, pending allowance of the claim or disallowance of the Disputed Claims.

### E.   Holding of Undeliverable Distributions and Failure to Claim

All Distributions are to be made to the holder of each Allowed Claim by the Plan Agent at the address listed on the Schedules or proof of claim filed by such holder at the time of

Distribution.  If any holders Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Debtor is notified of the holder's current address, at which time all required Distributions shall be made to the holder.  Undeliverable Distributions shall be held by the Debtor until such Distributions are claimed.  All Claims for undeliverable Distributions must be made within ninety (90) days following a Distribution.  After such date, all unclaimed Distributions shall be allocated pro rata to the members of the Class related to such Distribution notwithstanding any federal or state escheat laws to the contrary.

**F.  Fractional Amounts**

Payment of fractions of dollars will not be made.  Whenever any payment of a fraction of a dollar under the Plan would otherwise be called for, the actual payment made will reflect a rounding of such fraction to the nearest dollar (up or down) with half dollars being rounded down.

**G.  Binding Effect**

The Plan shall be binding on, and shall inure to the benefit of, the Debtor and the holders of all Claims and their respective successors and assigns.

**H.  Exculpation**

The Debtor, the Plan Agent, and their respective agents and attorneys shall not be liable for any actions or omissions taken or not taken in connection with or arising out of the administration of the Chapter 11 Case, pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for gross negligence or willful misconduct as determined by Final Order of the Bankruptcy Court.

**I.  Governing Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations of the Debtor, all Creditors and any other Person arising under the Plan

shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Nevada, without giving effect to Nevada's choice of law provisions.

**J.  Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, Sunday or legal holiday, or when the act to be done is filing of a paper in the Bankruptcy court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the next day which is not one of the aforementioned days.

**K.  Final Decree**

After the Estate is fully administered, the Debtor shall file an application for a Final Decree and shall serve the application on the U.S. Trustee, together with a proposed Final Decree. The application will be heard by the U.S. Bankruptcy Court with regard to closing the case.

**X.      TAX CONSEQUENCES OF THE PLAN**

THE FOLLOWING SUMMARY DOES NOT CONSTITUTE TAX ADVICE TO ANY PERSON.  NO REPRESENTATIONS REGARDING THE EFFECT OF IMPLEMENTATION OF THE PLAN ON INDIVIDUAL CREDITORS ARE MADE HEREIN OR OTHERWISE. ALL CREDITORS ARE URGED TO CONSULT THEIR TAX ADVISORS REGARDING THE TAX CONSEQUENCES OF THE PLAN TO THEM, TO THE DEBTOR AND TO THE BANKRUPTCY ESTATE.

THE DEBTOR, CREDITORS AND ANY PERSON, ENTITY, TRUST OR ORGANIZATION AFFILIATED WITH THE FOREGOING ("THE PARTIES") ARE

STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES TO THEM WHICH MAY RESULT FROM THE PROPOSED REORGANIZATION.  THIS DISCLOSURE STATEMENT SHALL NOT IN ANY WAY BE CONSTRUED AS MAKING ANY REPRESENTATIONS REGARDING THE PARTICULAR TAX CONSEQUENCES OF CONFIRMATION AND CONSUMMATION OF THE PLAN TO THE PARTIES.  THIS DISCLOSURE STATEMENT IS GENERAL IN NATURE AND IS MERELY A SUMMARY DISCUSSION OF POTENTIAL TAX CONSEQUENCES TO THE PARTIES AND IS BASED UPON THE INTERNAL REVENUE CODE AND PERTINENT REGULATIONS RULINGS, COURT DECISIONS, AND TREASURY DECISIONS.

Under the Internal Revenue Code of 1986, as amended (the "IRC"), there may be federal income tax consequences to the Parties as a result of confirmation and consummation of the Plan as described in the Disclosure Statement.

The federal income tax consequences to Creditors and their affiliates arising from the Plan will vary depending upon, among other things, the type of consideration received by the Creditor in exchange for its Claim, whether the Creditor reports income using a cash or accrual method, whether the Creditor has taken a "bad debt" deduction with respect to its Claim, whether the Creditor receives consideration in more than one tax year of the Creditor, whether the Creditor is a resident of the United States, and whether the Creditor's claim is classified as a "security" or "debt" for federal income tax purposes.  If a Creditor's claim is characterized as a loss from a security, then the loss will be treated as a sale or exchange of a capital asset under IRC §165, and whether it is a long term or short-term capital loss will depend on the Creditor's holding period. If a Creditor's claim is characterized as a loss resulting from a debt, then the extent of the

deduction will depend on whether the debt is deemed wholly worthless or partially worthless, and whether the debt is construed to be a business or non-business debt as determined under IRC §166.

## XI. LIQUIDATION ANALYSIS

A.    **Alternatives to the Plan**

The Debtor believes that the Plan, as described herein, enables the Creditors to receive payment of their Allowed Claims as quickly as possible and for the greatest return as required under the Bankruptcy Code.  In addition, the Debtor believes that the New Money Plan provides this payment more quickly than only other alternative.  In the Debtor's view, the only alternative to the Plan is a long term payment from the leasing of the Debtor's Property.  This payment methods would greatly reduce the amount of return to the Debtor's unsecured creditors and increase the possibility of foreclosure.

In general, to determine what holders of Allowed claims in each Class would receive if Debtor were liquidated, the Bankruptcy Court must determine what funds would be generated from liquidation of the Debtor's assets.  Such liquidation funds would be reduced by the costs and expenses of the liquidation and by such additional Administrative Claims and the use of the chapter 7 for the purpose of liquidation.

The funds recovered from liquidation would be further reduced by the commission payable to the chapter 7 trustee and the trustee's attorney's fees, as well as the costs of the chapter 11 estate (such as the compensation for chapter 11 professionals).  In a chapter 7 case, the trustee would be entitled to seek a sliding scale commission based upon the funds distributed to the Creditors.  In contrast, the trustee's commission is not paid in a chapter 11 case, and the Plan Administer under the Plan will not be paid a commission or any compensation for his services.

B. **Liquidation**

Pursuant to Section 1129(a)(7), for the Plan to be confirmed it must provide that creditors will receive at least as much under the Plan as she would receive in a liquidation of the Debtor under chapter 7 (the "Best Interests Test"). The Best Interests Test with respect to each impaired class requires that each holder of a claim of such class either (a) accepts the Plan, or (b) receives or retains under the Plan, property of value, as of the Effective Date, that is not less than the value such holder would receive or retain if the Debtor were liquidated under Chapter 7. The Court will determine whether the value received under the Plan by the holders of claims in each impaired class of creditors is equal to or exceeds the value that would be allocated to such holders in liquidation under Chapter 7 of the Bankruptcy Code. The Debtor believes that the Plan meets the Best Interests Test and provides value that is not less than the value which would be recovered by each holder in a Chapter 7 proceeding.

In the instant case, the Debtor only owns real property. Therefore, the impaired classes would recover only the net present value of the estate property after a foreclosure sale. The Plan provides for an infusion of new money to make payment of the secured claims and an extended time for leasing operations to result in the payment of equal or greater amounts than the present liquidation value to each of these classes.

If the Debtor were to liquidate the Property today, the sale would most likely be for the same amount of the Class 1-3 claims and generate no income for the general unsecured creditors. All anticipated proceeds would apply to secured claims prior to payment of any general unsecured claims or investor claims. Liquidation is anticipated to amount to less than required to satisfy the secured debt, leaving nothing for unsecured creditors. Therefore, the proposed payment plan would be more beneficial to the general unsecured creditors.

C. **Assumptions for Liquidation Analysis**

The following assumptions were made in preparing the Liquidation Analysis:

1. The Liquidation Analysis satisfies Section 1129(a)(7)(A)(ii) to determine whether the Plan is in the best interests of the Debtor's estate and creditors.

2. The Liquidation Analysis is based upon a number of estimates and assumptions that, although considered reasonable by the Debtor are subject to economic and business contingencies beyond the Debtor's control. Accordingly, no assurances can be made. The Liquidation Analysis is subject to change. Nothing contained herein shall be used as an admission against the Debtor or any other Person.

3. The Liquidation Analysis utilizes figures estimated by the Debtor as a basis for determining liquidation values. It includes any proceeds from the sale of fully encumbered Assets. Additionally, liquidation values have been estimated by the Debtor for certain Assets as more particularly set forth in **Exhibit 2**.

4. The Chapter 11 distribution to unsecured creditors ranges is anticipated to be 100% for payment of all Unsecured Claims. In contrast, the Chapter 7 distribution is anticipated to be $0% for Unsecured Creditors. See Exhibit 2.

**XII. CONCLUSION**

The Debtor has analyzed different scenarios and believes that confirmation of the Plan provides for a recovery for Creditors that is greater than other likely alternatives, and particularly a liquidation alternative. In addition, alternatives other than Confirmation of the Plan could result in extensive delays and increases in administrative expenses resulting in potentially smaller distributions to the holders of Claims and equity interests. Accordingly, the Debtor recommends confirmation of the Plan and urges all holders of Allowed Claims to vote to accept the Plan and

to indicate acceptance by returning their Ballots to be received no later than the voting deadline.

*(Remainder of Page Left Intentionally Blank)*

Dated this _15  day of May, 2023.

_____/s/ Daniel Itzhaki_____
Daniel Itzhaki, Managing Member of Eldan, LLC,

Submitted by:

LAW OFFICE OF TIMOTHY P. THOMAS, LLC

/s/ *Timothy P. Thomas*_____
Timothy P. Thomas, Esq.
Nevada State Bar No. 5148
1771 E. Flamingo Rd., Suite 212B
Las Vegas, NV 89119